UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HERBERT SMITH,

    Plaintiff                             Civil Action No. 10-12648
v.                                          District Judge George Caram Steeh
                                                Magistrate Judge R. Steven Whalen
MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Herbert Smith brings this action under 42 U.S.C. §405(g) challenging a final decision of Defendant Commissioner denying his application for Supplemental Security Income under the Social Security Act. Both parties have filed summary judgment motions which have been referred for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B). For the reasons set forth below, I recommend that Defendant's motion be GRANTED and Plaintiff's motion DENIED.

## PROCEDURAL HISTORY

Plaintiff filed an application for Supplemental Security Income ("SSI") on July 31, 2006, alleging disability as of October 30, 2005 (Tr. 80). After the initial denial of benefits on November 17, 2006, he made a timely request for an administrative hearing, held before Administrative Law Judge ("ALJ") James A. Horn in Oak brook, Illinois on July 8, 2009 (Tr. 14, 19). Plaintiff, represented by William Watkinson, appeared by teleconference from Oak Park, Michigan. *Id.* On August 4, 2009, ALJ Horn determined that Plaintiff was not disabled (16-17). On June 15, 2010, the Appeals Council denied review (Tr. 1-3). Plaintiff filed suit in this Court on July 2, 2010.

## BACKGROUND FACTS

Plaintiff, born July 3, 1963, was 46 when ALJ Horn issued his decision (Tr. 17, 80). He completed high school and three years of college and worked as an electrician (Tr. 100, 104). Plaintiff alleges disability due to an October, 2005 back injury (Tr. 99).

### A. Plaintiff's Testimony

Plaintiff, a resident of Pontiac, Michigan, testified that he currently lived with his uncle (Tr. 24). Plaintiff, divorced with one adult child, reported that he had journeyman's card (Tr. 25). He reported that he last worked between September, 2006 and April, 2007 as an electrician for Indacom Corporation, estimating that he worked between 40 and 60 hours each week (Tr. 25). He reported that neck and back pain forced him to leave the job in April, 2007 (Tr. 25). Prior to his work at Indicom, Plaintiff testified that he worked for "numerous electrical companies" (Tr. 26). He acknowledged that between 1999 and 2004 that he also "worked for [him]self," acknowledging that he did not pay either income taxes or self-employment tax on the those earnings (Tr. 26). He denied any self-employment since his October, 2005 injuries (Tr. 27). He reported some relief from November, 2005 neck surgery, but noted that he continued to experience range of motion limitations (Tr. 29).

Plaintiff alleged that he spent most of his waking hours reclining (Tr. 29). He denied performing home exercises or taking pain medication (Tr. 31). He indicated that his back and neck pains were exacerbated by cold weather (Tr. 32). He estimated that he could sit or stand for an hour before experiencing discomfort, but was unable to walk more than two blocks due to back pain (Tr. 33). He alleged that he was unable to lift more than eight pounds (Tr. 33). He indicated that he experienced limited relief from ice packs, heating pads, and hot showers (Tr. 34). He expressed the desire to undergo lower back surgery and then resume work (Tr. 34).

### B. Medical Records[1]

#### 1. Treating Sources

On October, 2005, Plaintiff sought emergency treatment after injuring his back and neck in a fall (Tr. 245). Imaging studies showed a fracture at L-4 (Tr. 244). On November 1, 2005, he underwent a partial corpectomy at C5 and C6 and a fusion at C5-6 without complications (Tr. 229, 231). On November 29, 2005, Steven M. Rapp, M.D., noting that Plaintiff had undergone a

---

[1] The medical transcripts, not relevant to the ALJ's Step One determination, are included for background purposes only.

November 1, 2005 partial corpectomy and fusion of the cervical spine, observed good strength bilaterally (Tr. 178). Dr. Rapp opined that Plaintiff's complaints of weakness and numbness were "somewhat exaggerated" (Tr. 178). In January, 2006, Dr. Rapp noted that Plaintiff had progressed "remarkably well" (Tr. 179). Noting Plaintiff's complaints of continued low back pain, Dr. Rapp opined that Plaintiff "would become a candidate for decompression and fusion at L4 and L5 (Tr. 179). Imaging studies from the same month showed "mild"stenosis at L4-5 (Tr. 183, 240).

The following month, Plaintiff, exhibiting "drug seeking behavior," was denied narcotics by emergency room personnel (Tr. 217, 234). In April, 2006, Plaintiff stated that he was "doing fairly well" (Tr. 181). The same month, Plaintiff sought emergency treatment for lumbar back pain (Tr. 170). Imaging studies show degenerative disc disease but no "compression or vertebral malalignment" He was prescribed Toradol and released (Tr. 160, 163).

In June, 2006, emergency room staff noted that Plaintiff was "very manipulative" (Tr. 212, 214). Plaintiff again sought emergency treatment in July, 2006 (Tr. 186). He was diagnosed with "[c]hronic neck and back pain" and "drug-seeking behavior" (Tr. 186, 211). In September, 2006, Plaintiff again requested Vicodin from emergency room personnel (Tr. 208). November, 2006 imaging studies showed mild stenosis at L3-4 and mild to moderate stenosis at L4-5 (Tr. 202). The same month, Mark F. Rollenberg, M.D. performed a consultive examination of Plaintiff, advising epidural steroid blocks and physical therapy for ongoing reports of pain (Tr. 370). He opined that Plaintiff should avoid lifting and/or carrying of more than 15 pounds (Tr. 370). The following month, imaging studies show that degenerative changes at L4 were stable (Tr. 362).

In March, 2008, Plaintiff sought emergency treatment for chest pains, admitting to cocaine, heroin, and marijuana use, adding that he had not "come in earlier because he was out partying" (Tr. 328). Imaging studies were unremarkable (Tr. 446). Plaintiff denied other health problems (Tr. 328). The same month, 2008, a physical examination showed "normal motor strength and tone" (Tr. 313). In June, 2008, he sought treatment for lightheadedness (Tr. 427). He was diagnosed with "acute benign positional vertigo" (Tr. 423).

**2. A Non-examining Source**

A November, 2006 non-examining Residual Functional Capacity Assessment performed on behalf of the SSA found that Plaintiff was capable of lifting 20 pounds occasionally and ten frequently; the ability to sit, stand, or walk for six hours in an eight-hour workday; and an unlimited ability push and pull in all extremities (Tr. 189). Plaintiff's postural limitations consisted of occasional balancing, stooping, kneeling, crouching, crawling, and stair and ramp climbing (Tr. 190). He was precluded from all climbing of ladders, ropes, and scaffolds (Tr. 190). His manipulative impairments consisted of a limited ability to reach overhead (Tr. 191). The Assessment found the absence of visual or communicative limitations, concluding that Plaintiff should avoid even moderate exposure to vibration and concentrated exposure to hazards (Tr. 192).

**C. The ALJ's Decision**

ALJ Horn determined that Plaintiff was not disabled at "Step One" of the administrative sequence, finding that Plaintiff "failed to prove that he did not engage in substantial gainful activity ("SGA") following his alleged onset of disability date (Tr. 15-17).

The ALJ noted that although Plaintiff alleged that he had not worked since April, 2007, his 2007 fourth quarter earnings showed that he made $7,137 and that the first two quarters of 2008 also showed SGA (Tr. 16). The ALJ also observed that Plaintiff drew unemployment benefits from the second quarter of 2008 through the second quarter of 2009 (Tr. 16).

In support of the Step One finding, the ALJ also observed that Plaintiff did not declare 1999 through 2005 earnings (Tr. 16), concluding that Plaintiff had "demonstrated a willingness to work off the book" (Tr. 16). He noted that as a condition to receiving unemployment compensation, Plaintiff was required to state that he was "ready, willing, and able to work" (Tr. 16).

**STANDARD OF REVIEW**

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate

to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a). The plaintiff has the burden of proof as steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## ANALYSIS

### A. Substantial Gainful Activity

Plaintiff argues first that the ALJ erred in finding that his eight-month work stint with Indacom was "Substantial Gainful Activity," contending instead that it was a "failed work attempt."

*Plaintiff's Brief* at 6. He asserts further that the ALJ erroneously found that he worked at Indacom between September, 2006 and April, 2007, when in fact, he worked for the corporation between September, *2007* and April, *2008*. On a related note, he argues that the ALJ improperly rejected the disability claim on the basis that he continued to collect unemployment benefits for over a year following his work at Indacom. *Id.* at 7.

### 1. Basic Principles

"The Social Security Act provides that an individual who is working and engaged in substantial gainful activity is not entitled to disability benefits." *Bell v. Commissioner of Social Sec.* 105 F.3d 244, 245 (6th Cir. 1996); 42 U.S.C. § 423(f). Step One of the administrative sequence "is a determination whether the claimant is engaged in substantial gainful activity. If she is, her claim is rejected without consideration of her medical condition." *Id.* at 245-246; 20 C.F.R. §§ 416.920(a), (b). "'Substantial work activity' is defined . . . as work that 'involves doing significant physical or mental activities' and 'is the kind of work usually done for pay or profit.'" *Id.*at 246 ; 20 C.F.R. §§ 416.972(a), (b). "[I]t is plaintiff's burden at step one to rebut the presumption that she is engaged in substantial gainful activity based on her earnings." *Id.* at 246 (citing *Dinkel v. Sec. of Health and Human Services,* 910 F.2d 315, 319 (6th Cir.1990)). If a claimant received an average of per month of $900 in 2007, $940 for 2008, and $980 for 2009, "a rebuttable presumption is created that she is engaged in SGA[2]." 20 C.F.R. § 416.974(b)(2).

### 2. An Unsuccessful Work Attempt?

Plaintiff characterizes his work for Indacom as an "unsuccessful work attempt," rather than SGA. *Plaintiff's Brief* at 7.

20 C.F.R. § 404.1574(c)(5) provides that work "performed at the substantial gainful activity earnings level for more than 6 months" cannot be considered an unsuccessful work attempt, "regardless of why it ended or was reduced below the substantial gainful activity earnings level." Plaintiff's counsel asserts that the stint at Indacom as "approximately six months." *Id.* However, at

---

[2] *See* http;//www.socialsecurity.gov/OACT/COLA/sga.html.

the hearing, his client testified that the full-time employment with Indacom spanned "approximately seven to eight months" from September of one year to April of the next (Tr. 25). Further, even assuming at a minimum that Plaintiff began work for Indacom on September 30 and quit work on April 1 of the next year, the work would have lasted over six months. Regardless of Plaintiff's allegation that he left because of back and neck problems, this work cannot be considered an "unsuccessful work attempt."

### 3. What Year Did Plaintiff's Work Commence at Indacom?

Plaintiff argues next that the ALJ erred by finding that he engaged in work activity outside the months spent with Indacom. *Plaintiff's Brief* at 6-7. He contends that the ALJ's assumption that he worked at Indacom from September, 2006 to April, 2007 (rather than September, 2007 to April, 2008) led him to the erroneous conclusion that earnings for the last quarter of 2007 and the first two quarters of 2008 represented income in addition to the Indacom earnings. *Id.*

Earning records for 2007 and 2008 (Tr. 94-95) indeed suggest that Plaintiff worked for Indacom between September, 2007 to April, 2008. However, the ALJ's "error" does not provide grounds for remand. First, Plaintiff's own testimony that he last worked in April, 2007, juxtaposed with earning statements for the last quarter of 2007 to the second quarter of 2008, support the conclusion that Plaintiff performed additional work. While Plaintiff's counsel argues now that his client's testimony was "a simple misstatement," same counsel, present at the hearing, examined Plaintiff but did not attempt to clarify the "April, 2007" testimony. As such, the Court cannot entertain his attempt to "amend" the testimony at this time.

Moreover, from the 2011 perspective the April, 2007/2008 mixup (three or four years prior) *could* be construed as a "simple misstatement." However, it must be noted that the administrative hearing took place in July, 2009. Following this argument to its logical end, Plaintiff's counsel is contending (implausibly) that his client was unable to remember whether he last worked one year or two years ago. Additional substantial evidence supports the ALJ's Step One conclusion. As discussed above, Plaintiff was clearly engaged in SGA after his alleged onset of disability. Plaintiff's further acknowledgment he worked "off the books" between 1999 and 2005 negatively

affects his credibility, and supports the conclusion that he continued to do so(in addition to the documented Indacom work) after the alleged onset of disability date.

### 4. Unemployment Benefits

Plaintiff also faults the ALJ for supporting the disability claim by noting that he "sought and received unemployment compensation benefits indicating he was ready, willing, and able to work." *Plaintiff's Brief* at 7-9 (*citing* Tr. 16). He relies on an August 9, 2010 memorandum by Chief ALJ Frank A. Cristaudo which states that "[i]t is the SSA's position that individuals need not choose between applying for unemployment insurance and Social Security disability benefits." *Plaintiff's Brief* at 8.

This Circuit has found that the collecting of unemployment benefits (requiring recipients to state that they are seeking work) stands at odds with allegations of disability under the Social Security Act. *Workman v. Commissioner of Social Sec.*, 105 Fed.Appx. 794, 801, 2004 WL 1745782, *7 (6th Cir. 2004)(citing *Kinsella v. Schweiker,* 708 F.2d 1058, 1059 (6th Cir.1983), upholding an ALJ's credibility determination on the basis that "[a]pplications for unemployment and disability benefits are inherently inconsistent"). *See also Bowden v. Commissioner Social Sec.,* 1999 WL 98378, *7 (6th Cir. 1999)(the claimant "offers no reasonable explanation of how a person can claim disability benefits under the guise of being unable to work, and yet file an application for unemployment benefits claiming that she is ready and willing to work"). ALJ Cristaudo's memorandum does not state that ALJs are not permitted to discount a claimant's credibility on the basis he is collecting unemployment benefits; rather, it should be considered with other evidence in determining disability. *See Memorandum, Plaintiff's Brief* at 8. "Often, the underlying circumstances will be of greater relevance that the mere application for and receipt of the benefits. For instance, the fact that a person has, during his or her period of disability, sought employment at jobs with physical demands in excess of the person's alleged limitations would be a relevant factor that an ALJ should take into account . . . ." *Id.*

Plaintiff's implied argument that the ALJ did not consider the receipt of unemployment benefits in context of the entire claim is unavailing. The hearing transcript shows that the ALJ was

well acquainted with Plaintiff's underlying injury and medical history (Tr. 21-22). Further, the ALJ used the unemployment benefits in conjunction with other evidence to support the Step One finding. Consistent with ALJ Cristaudo's example, ALJ Horn noted that although Plaintiff alleged an inability to work, he had engaged in SGA over the course of the claimed period of disability. He also permissibly discounted the claim by noting that Plaintiff had not declared his income for several years prior to alleged onset of disability. Finally, even assuming that the ALJ erred in using the unemployment benefits to discredit the claim, his findings that Plaintiff had engaged in SGA and failed to declare several years of income easily supports the Step One finding.

### B. The ALJ Need Not Have Proceeded With the Remaining Steps of the Sequential Analysis

Last, Plaintiff, noting that his back and neck problems qualify as severe impairments, argues that the ALJ erred by not completing the administrative sequence. *Plaintiff's Brief* at 9-11. Contrary to this contention, the ALJ had no such duty. *See Bell, supra,* 105 F.3d at 247; 20 C.F.R. § 416.920(b)("The first step in the sequential analysis is a determination of whether the applicant is currently engaged in SGA. If she is, her claim is rejected without consideration of the severity of her mental or physical impairments or how disabling the impairments are").[3] Accordingly, the Commissioner's decision should be upheld.

### CONCLUSION

For the reasons stated above, I recommend that Defendant's Motion for Summary Judgment be GRANTED, and Plaintiff's Motion for be Summary Judgment DENIED.

Any objections to this Report and Recommendation must be filed within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505

---

[3] Although not relevant to the Step One determination, the medical records, closely reviewed by the undersigned, almost uniformly contradict Plaintiff's testimony that he reclines for most of his waking hours, requires back surgery, and is unable to perform any work.

(6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/R. Steven Whalen
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

Dated: July 6, 2011

_____

### CERTIFICATE OF SERVICE

I hereby certify on July 6, 2011 that I electronically filed the foregoing paper with the Clerk of the Court sending notification of such filing to all counsel registered electronically. I hereby certify that a copy of this paper was mailed to the following non-registered ECF participants on July 6, 2011: **None.**

s/Michael E. Lang
Deputy Clerk to
Magistrate Judge R. Steven Whalen
(313) 234-5217